**Deangelo PINKSTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0412–CR–1003.**

Court of Appeals of Indiana.

Oct. 31, 2005.

Transfer Denied Jan. 11, 2006.

Marshelle Dawkins Broadwell, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Following a jury trial, Deangelo Pinkston was found guilty of theft and auto theft, both Class D felonies. The trial court sentenced Pinkston to a four-year term of imprisonment. Pinkston now appeals his sentence. We affirm in part, reverse in part, and remand.

### Issues

Pinkston raises one issue for our review, which we expand and restate as follows:

1. Whether the aggravator phase of Pinkston's bifurcated trial, in which the jury found the existence of two aggravating circumstances later used by the trial court in sentencing Pinkston, violated the Distribution of Powers Clause of the Indiana Constitution; and

2. Whether the trial court properly enhanced Pinkston's sentence.

### Facts and Procedural History

On July 24, 2003, Pinkston was charged with kidnapping, a Class A felony, carjacking and robbery, both Class B felonies, and theft and auto theft, Class D felonies. On September 28, 2004, the State filed a notice of aggravating factors. This notice informed Pinkston that the State intended to prove that (1) Pinkston was in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility, and (2) imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime. On October 5, 2004, a jury found Pinkston guilty of theft and auto theft, but not guilty of kidnapping, carjacking, and robbery.

After the jury returned its verdict, instead of dismissing the jury, the trial court began the aggravator phase of the trial. Pinkston never raised an objection to the trial court's conducting an aggravator phase of the trial. The trial court proceeded to instruct the jury as follows:

Ladies and gentlemen of the jury and alternate jurors, normally after reaching a verdict your duty as jurors would be over. However, in this case the State has filed an additional notice of aggravating circumstances, which are additional facts that must be proven to you beyond a reasonable doubt. These aggravating circumstances relate to the sentencing phase of the trial. Under Indiana law you could not be told about the additional aggravating circumstances until now. In this part of the trial the attorneys will again have an opportunity to make opening statements. Then witnesses may be called to testify and or evidence submitted. When the evidence is completed

the attorneys may make final statements. Then I will read final instructions. You may consider all of the evidence presented in the first part of the trial.... A notice of aggravating circumstances alleges that certain aggravating circumstances exist.... The State may seek to prove aggravating circumstances for the Court to consider at sentencing. In this case the State has alleged the following aggravating circumstance. Number one, the Defendant [Pinkston] is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility. If the State fails to prove this fact beyond a reasonable doubt you must find that this aggravating circumstance does not exist. If the State does prove this fact beyond a reasonable doubt you should find that the aggravating circumstance does exist.... [T]he State has [also] alleged the following aggravating circumstance. Number two, imposition of a reduced sentence or suspension of the sentence or imposition of probation would depreciate the seriousness of the crime. If the State fails to prove this fact beyond a reasonable doubt you must find that this aggravating circumstance does not exist. If the State does prove this fact beyond a reasonable doubt you should find that the aggravating circumstance does exist.

Transcript at 235–37.

The State was then given the opportunity to introduce evidence. The State first called Santiago Lucas to the stand. Lucas testified that while he and Pinkston were inmates at the Marion County Jail, Pinkston kicked him in the face and punched him causing him serious injuries. The State next moved to incorporate the evidence and the verdict from the earlier phase of the trial, and the trial court granted this motion. The State last called the victim, George Burns, to testify.

Burns related how Pinkston's actions had affected him and his life. The State then rested. Pinkston's counsel cross-examined Lucas, but otherwise presented no further evidence. After deliberating, the jury found that the State proved both of the charged aggravators beyond a reasonable doubt.

The trial court held a sentencing hearing on November 3, 2004. The trial court found that several aggravating factors were present. The trial court first noted that Pinkston had a criminal history. Pinkston's criminal history consisted of several juvenile adjudications including: a 1995 true finding for battery; true findings in 1998 for theft, resisting law enforcement, and disorderly conduct; true findings in 1999 for criminal mischief and theft; and a 2000 true finding for fleeing law enforcement. Pinkston's criminal history did not include any adult criminal convictions. The trial court also noted that the jury found (1) that Pinkston was in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility, and (2) that imposition of a reduced or suspended sentence would depreciate the seriousness of the offense. The trial court did not find any mitigating factors and, therefore, concluded that the aggravating factors outweighed the mitigating factors. The trial court enhanced Pinkston's conviction for theft by six months and did the same for Pinkston's auto theft conviction. With the six-month enhancement, the sentence for each of Pinkston's convictions was two years. The trial court determined that Pinkston's sentences should run consecutively for a total term of imprisonment of four years. Pinkston now appeals.

*Discussion and Decision*

I. Constitutionality of Aggravator Phase of Trial

██ Pinkston first contends that the aggravator phase of his trial violated Arti-

cle 3, Section 1 of the Indiana Constitution, the Distribution of Powers Clause. The State argues that Pinkston has waived this argument by failing to object to the trial court conducting an aggravator phase of the trial. The failure to object to an error at trial results in waiver of that issue on appeal. *Bruno v. State,* 774 N.E.2d 880, 883 (Ind.2002). A claim of error involving a constitutional violation can be waived if the error is not properly objected to at trial. *See Butler v. State,* 724 N.E.2d 600, 604 (Ind.2000) (concluding that defendant waived claim under Indiana Constitution because he failed to raise an objection to the habitual offender instructions given at his trial). Here, Pinkston never objected to the trial court conducting an aggravator phase of the trial. Therefore, Pinkston has waived this issue.

■ Waiver notwithstanding, we conclude that the aggravator phase of Pinkston's trial did not violate the Distribution of Powers Clause of the Indiana Constitution. Article 3, Section 1 of the Indiana Constitution provides:

> The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

Pinkston argues that it is the Indiana General Assembly's responsibility to establish the procedure to be followed in order to enhance a sentence beyond the presumptive sentence. He contends that by conducting an aggravator phase of the trial, the trial court essentially re-wrote the procedures established by the General Assembly, and thereby usurped a duty assigned to the legislative branch of our state government.

The reason the trial court here added an aggravator phase to Pinkston's trial stems directly from the United States Supreme Court's holding in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely,* the United States Supreme Court reaffirmed its holding in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435, 455 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." The *Blakely* court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." 124 S.Ct. at 2537 (emphasis in original).

In *Smylie v. State,* 823 N.E.2d 679, 681–82 (Ind.2005), *cert. denied,* No. 04–10472, 2005 WL 1387567, —— U.S. ——, 126 S.Ct. 545, 163 L.Ed.2d 459 (U.S. June 2, 2005), our supreme court concluded that, pursuant to *Blakely,* portions of Indiana's sentencing scheme violate the Sixth Amendment's right to trial by jury. The court specifically stated that "[i]t is apparent that Indiana's sentencing system runs afoul of the Sixth Amendment not because it mandates a 'fixed term' sentence for each felony, but because it mandates both a fixed term and permits judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term." *Smylie,* 823 N.E.2d at 685. The court held that "the sort of facts envisioned by *Blakely* as necessitating a jury finding [any fact that increases the penalty

for a crime beyond the prescribed statutory maximum] must be found by a jury under Indiana's existing sentencing laws." *Id.* at 686. In order to avoid violating Pinkston's Sixth Amendment right to trial by jury, the trial court here conducted an aggravator phase of the trial at which the State could prove to the jury the presence of any aggravating factors that might be used to increase Pinkston's sentence beyond the presumptive sentence.

We believe that in *Smylie*, our supreme court specifically authorized the use of an aggravator phase at a trial as a means of avoiding a Sixth Amendment violation. In *Smylie*, the court states, "A constitutional scheme akin to ours could take one of two forms: (1) our present arrangement of fixed presumptive terms, modified to require jury findings on facts in aggravation...." *Id.* at 685. The court determined that Smylie's sentence was improper because it was enhanced using aggravating factors that were not found by a jury. *Id.* at 687. The court concluded that the case should be remanded "for a new sentencing hearing in which the State may elect to prove adequate aggravating circumstances before a jury or accept the statutory fixed term." *Id.* at 691. *Smylie* indicates that it would be constitutional for a trial court to hold a hearing where the State could prove to a jury the presence of certain aggravating factors. This is the same procedure employed by the trial court here. Based on *Smylie*, we cannot say that the trial court's addition of an aggravator phase to Pinkston's trial was unconstitutional.

Furthermore, we fail to see how the addition of an aggravator phase to a defendant's trial usurps an official duty assigned to the legislature. Pinkston does not point to any statute that would specifically preclude the addition of an aggravator phase to a defendant's trial. In the absence of any statutory mandate, "[t]rial courts have the inherent authority to control the conduct of trials." *Fugett v. State*, 812 N.E.2d 846, 850 (Ind.Ct.App.2004). Additionally, Indiana Code section 35–50–1–1 provides that the trial court "shall fix the penalty of and sentence a person convicted of an offense." Permitting a jury to find that certain aggravating factors exist during the aggravator phase of a trial does not disrupt this statutory mandate because the trial court is still required to weigh the aggravating and mitigating factors and determine the proper penalty and sentence. Therefore, the addition of an aggravator phase to Pinkston's trial did not violate the Distribution of Powers Clause of the Indiana Constitution.

## II. Improper Aggravators

Pinkston next argues that the trial court erred in enhancing his sentence because it relied upon improper aggravators. We agree.

### A. Standard of Review

The thrust of Pinkston's arguments concern whether his sentence is inappropriate. Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. *Bennett v. State*, 787 N.E.2d 938, 949 (Ind.Ct.App.2003), *trans. denied.* Additionally, it is clear that our supreme court has encouraged us to critically investigate sentencing decisions. *Id.* However, we exercise with great restraint our responsibility to review and revise sentences, recognizing the special expertise of the trial bench in making sentencing decisions. *Id.* A sentence that is authorized by statute, will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. *Id.* (citing Ind. Appellate Rule 7(B)). When determining if a sentence is appropriate, we initially look to the presumptive sentence. *Hildebrandt v. State*, 770

N.E.2d 355, 361 (Ind.Ct.App.2002), *trans. denied.* We then consider deviation from the presumptive sentence based on the balancing of any aggravating or mitigating circumstances. *Id.*

Under Indiana Appellate Rule 7(B), the "nature of the offense" speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs. *Id.* The "character of the offender" part of Indiana Appellate Rule 7(B) refers to the general sentencing considerations under Indiana Code section 35–38–1–7.1(a) and the balancing of aggravating and mitigating circumstances under Indiana Code section 35–38–1–7.1(b) and (c), as well as the other factors left to the trial court's discretion under section 35–38–1–7.1(d). *Id.*

### B. Criminal History Aggravator

The trial court found that Pinkston's criminal history was an aggravating factor and relied on this factor in enhancing Pinkston's sentence. The State contends that this was a proper aggravating factor because it does not implicate *Blakely.* We have previously held that prior convictions are exempt from the *Apprendi/Blakely* analysis because they have already been proven beyond a reasonable doubt. *See McNew v. State,* 822 N.E.2d 1078, 1081 (Ind.Ct.App.2005). Pinkston's criminal history consists solely of juvenile adjudications. In *Ryle v. State,* 819 N.E.2d 119, 123 (Ind.Ct.App.2004), *trans. granted,* a panel of this court concluded that "juvenile adjudications are 'prior convictions' under *Apprendi,*" and, therefore, do not implicate *Blakely.* The panel noted that several other courts had reached the same result. *Id.* at 122 (citing *United States v. Jones,* 332 F.3d 688 (3d Cir.2003), *cert. denied,*

540 U.S. 1150, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004); *United States v. Smalley,* 294 F.3d 1030 (8th Cir.2002), *cert. denied,* 537 U.S. 1114, 123 S.Ct. 870, 154 L.Ed.2d 790 (2003); *State v. Hitt,* 273 Kan. 224, 42 P.3d 732 (2002), *cert. denied,* 537 U.S. 1104, 123 S.Ct. 962, 154 L.Ed.2d 772 (2003)).[1] In explaining why juvenile adjudications should be exempted from the *Blakely* analysis, the court stated:

> *Apprendi* created an exception allowing the use of a prior conviction to increase a defendant's sentence, based on the historical role of recidivism in the sentencing decision and on the procedural safeguards attached to a prior conviction. Juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards; therefore, the *Apprendi* exception for prior convictions encompasses juvenile adjudications.

*Ryle,* 819 N.E.2d at 122–23 (quoting *Hitt,* 42 P.3d at 740).

Under *Ryle,* even though Pinkston's criminal history only consisted of juvenile adjudications, the trial court's identification of Pinkston's criminal history as an aggravating factor would not have violated Pinkston's Sixth Amendment right to trial by jury. However, our supreme court has granted transfer of *Ryle* and that opinion is now vacated. *See* Ind. Appellate Rule 58(A). Because transfer has been granted, *Ryle* has no precedential value. *Estate of Helms v. Helms–Hawkins,* 804 N.E.2d 1260, 1268 n. 4 (Ind.Ct.App.2004), *trans. denied.* We then are left with the question of whether the trial court could properly rely upon Pinkston's juvenile adjudications to enhance his sentence.

---

**1.** Recently, other courts have adopted this same position. *See State v. Deters,* 2005 WL 1863406, *3 (Ohio Ct.App.2005); *Nichols v. State,* 910 So.2d 863, 2005 WL 1523772 (Fla. Dist.Ct.App.2005); *United States v. Burge,* 407

F.3d 1183, 1191 (11th Cir.2005), *cert. denied,* No. 05–5601, 2005 WL 1859969, —— U.S. ——, 126 S.Ct. 551, 163 L.Ed.2d 467 (U.S. July 27, 2005).

In attempting to resolve this issue, we first look to the Indiana Code and our own supreme court's precedents. Indiana Code section 31–32–2–6 provides that "[a] child may not be considered a criminal as a result of an adjudication in a juvenile court, *nor may an adjudication in juvenile court be considered a conviction of a crime.*" (Emphasis added). Similarly, our supreme court has stated that "[j]uvenile adjudications do not constitute criminal convictions." *Jordan v. State*, 512 N.E.2d 407, 408 (Ind.1987). Based on this, we conclude that juvenile adjudications are not prior convictions under *Blakely/Apprendi* because they do not constitute criminal convictions. Because juvenile adjudications are not prior convictions, they are not exempt from the *Blakely* analysis. Therefore, in order to use a defendant's juvenile adjudications to enhance his or her sentence beyond the presumptive sentence, the juvenile adjudications must be submitted to a jury and proven beyond a reasonable doubt. Here, Pinkston's juvenile adjudications were not submitted to the jury and proven beyond a reasonable doubt. Therefore, pursuant to *Blakely,* the trial court's use of Pinkston's juvenile adjudications to enhance his sentence violated his Sixth Amendment right to a trial by jury.

The Tennessee Court of Criminal Appeals has adopted an approach with regard to the use of juvenile adjudications to enhance a defendant's sentence similar to the one we employ here. Tennessee Code section 37–1–133(a), like Indiana Code section 31–32–2–6, provides that a juvenile adjudication is not a criminal conviction.[2] *State v. Chatman*, 2005 WL 901138, *6 (Tenn. Crim.App.2005). Relying upon this statute, the Tennessee Court of Criminal Appeals has concluded that juvenile adjudications do not qualify as prior convictions under *Blakely/Apprendi,* and that a trial court's use of a defendant's juvenile adjudications to enhance his sentence is inappropriate under *Blakely.* *Id.; see also State v. Wallace,* 2005 WL 195086, *10 (Tenn.Crim.App.2005), *appeal denied.* The Tennessee Court of Criminal Appeals' resolution of this issue suggests that our conclusions concerning the use of juvenile adjudications to enhance a defendant's sentence are sound.

The question that remains, though, is why juvenile adjudications implicate *Blakely/Apprendi* when criminal convictions do not. Since *Apprendi,* several courts have addressed this issue. In *United States v. Tighe,* 266 F.3d 1187, 1193 (9th Cir.2001), the Ninth Circuit considered whether "prior juvenile adjudications, which do not afford the right to a jury trial, fall within the 'prior conviction' exception to *Apprendi*'s general rule that a fact used to increase a defendant's maximum penalty must be submitted to a jury and proved beyond a reasonable doubt." The court began by asserting that there are significant constitutional differences between adult convictions and juvenile adjudications, specifically the lack of a right to a jury trial in most juvenile adjudications. *Id.* at 1192–93. In attempting to answer the question before it, the court stated that it needed to "inquire into the scope of the term 'conviction' as used by the Supreme Court in *Apprendi. . . .*" *Id.* at 1193. The court noted that

---

**2.** Tennessee Code section 37–1–133(a) specifically provides:

An order of disposition or other adjudication in a proceeding under this part is not a conviction or crime and does not impose any civil disability ordinarily resulting from a conviction or operate to disqualify the child in any civil service application or appointment. A child shall not be committed or transferred to a penal institution or other facility used primarily for the execution of sentences of persons convicted of a crime, except as provided in § 37–1–134.

in *Almendarez–Torres v. United States,* 523 U.S. 224, 229, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court held for the first time that a defendant's prior convictions could be used to enhance his or her sentence. Later, in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Supreme Court revisited *Almendarez–Torres* and explained why the fact of prior convictions was constitutionally distinct from other sentence enhancing facts. The Supreme Court stated, "One basis for that possible constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Jones,* 526 U.S. at 249, 119 S.Ct. 1215. The Ninth Circuit concluded that "*Jones*' recognition of prior convictions as a constitutionally permissible sentencing factor was rooted in the concept that prior convictions have been, by their very nature, subject to the fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions: fair notice, reasonable doubt and the right to a jury trial." *Tighe,* 266 F.3d at 1193.

The Ninth Circuit then went on to consider *Apprendi* where the Supreme Court further elaborated on the importance of such procedural protections. The Ninth Circuit stated that in *Apprendi,* the Supreme Court "explained that 'the certainty that procedural safeguards attached to the 'fact' of prior conviction' was crucial to *Almendarez–Torres*' constitutional holding regarding prior convictions as sentencing factors." *Id.* at 1193–94 (quoting *Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348). In *Apprendi,* the Supreme Court stressed the importance of the right to a jury trial when it stated, "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." 530 U.S. at 496, 120 S.Ct. 2348. The Ninth Circuit concluded that the Supreme Court's "continued acceptance of *Almendarez–Torres*' holding regarding prior convictions, then, was premised on sentence-enhancing prior convictions being the product of proceedings that afford crucial procedural protections—particularly the right to a jury trial and proof beyond a reasonable doubt." *Tighe,* 266 F.3d at 1194. The court then stated:

> Thus, as we read *Jones* and *Apprendi,* the "prior conviction" exception to *Apprendi*'s general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within *Apprendi*'s "prior conviction" exception.

*Id.* The court held that the district court "violated *Apprendi* when, at sentencing, it increased Tighe's penalty beyond the prescribed statutory maximum based on an adjudication which denied Tighe the right to a jury trial." *Id.* at 1195.

In *State v. Brown,* 879 So.2d 1276, 1289 (La.2004), *cert. denied* —— U.S. ——, 125 S.Ct. 1310, 161 L.Ed.2d 161, the Louisiana Supreme Court agreed with the conclusions reached by the Ninth Circuit in *Tighe.* In *Brown,* the court considered "whether it is constitutionally permissible to use a juvenile adjudication, in which the juvenile had not been afforded the right to

a trial by jury, to enhance [the defendant's] sentence for a felony committed when he is an adult." *Id.* at 1277. The court began by considering the history of juvenile courts. The juvenile court movement began in the late nineteenth century because reformers had become appalled by the fact that children were being convicted of adult crimes and placed in prisons with adult criminals. *Id.* at 1285. The court noted that

> [u]nder the guise of *parens patriae,* juvenile courts emphasized treatment, supervision, and control rather than punishment, and exercised broad discretion to intervene in the lives of young offenders. Characterizing intervention as a civil or welfare proceeding completed the separation of juvenile from criminal courts and allowed greater authority to control and supervise children. Because of the rehabilitation rationale, the courts justified making the juvenile court less formal.... The purpose of sanctions would be for therapeutic and rehabilitative purposes, not for retribution or incapacitation.

*Id.* at 1286 (citations omitted). The court believed that this history revealed differences between the juvenile system and the adult criminal system. The court noted that juvenile proceedings were civil in nature and focused on rehabilitation rather than retribution. *Id.* The court pointed out that there is a great disparity in the severity of penalties faced by a juvenile charged with delinquency and an adult defendant charged with the same crime. *Id.* at 1288. The court also noted that during juvenile proceedings, juveniles are afforded less procedural safeguards than adults are afforded during criminal proceedings. *Id.* at 1285. The court particularly noted that due process did not require providing juveniles with the right to a jury trial. *Id.* at 1287; *see also McKeiver v. Pennsylvania,* 403 U.S. 528, 545, 91

S.Ct. 1976, 1986, 29 L.Ed.2d 647 (1971) (concluding that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement). The court determined that "because juveniles do not have a right to a jury trial in these [juvenile] proceedings, juvenile adjudications cannot be used to enhance adult felony convictions...." *Brown,* 879 So.2d at 1288. The court concluded that because juvenile adjudications were not a conviction of any crime, they should not be counted as a "prior conviction" for *Apprendi* purposes. *Id.* at 1289. The court noted:

> It seems contradictory and fundamentally unfair to provide youths with fewer procedural safeguards in the name of rehabilitation and then to use adjudications obtained for treatment purposes to punish them more severely as adults. It is inconsistent to consider juvenile adjudications civil for one purpose and therefore not constitutionally entitled to a jury trial, but then to consider them criminal for the purpose of classifying them as "prior convictions"....

*Id.* The court concluded that "[b]ecause a juvenile adjudication is not established through a procedure guaranteeing a jury trial, it cannot be excepted from *Apprendi*'s general rule; the use of these adjudications to increase the penalty beyond the statutory maximum violates the defendant's Due Process right guaranteed by the Fourteenth Amendment of the United States Constitution." *Id.* at 1290.

We agree with the conclusion reached in *Tighe* and *Brown* that there are fundamental differences between juvenile adjudications and criminal convictions. In Indiana, juvenile proceedings are civil in nature. *K.M. v. State,* 804 N.E.2d 305, 308 (Ind.Ct.App.2004), *trans. denied.* The purpose of our juvenile justice system is to rehabilitate delinquent children. Ind.Code § 31–10–2–1(5). "When the State seeks to

have a juvenile adjudicated to be a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt." *R.L.H. v. State*, 738 N.E.2d 312, 315 (Ind.Ct.App. 2000); Ind.Code § 31–37–14–1. Juveniles are not subjected to the same types of penalties that criminal defendants face. The Indiana Code "affords juvenile courts a degree of discretion and flexibility, unparalleled in the criminal code, to address the needs of children and to act in their best interests." *In re K.G.*, 808 N.E.2d 631, 637 (Ind.2004). After a juvenile court has found a juvenile to be a delinquent child it may (1) order supervision of the child by the probation department; (2) order the child to receive outpatient treatment at a social service agency, or a psychological, a psychiatric, a medical, or an educational facility; (3) remove the child from the child's home and place the child in another home or shelter care facility; (4) award wardship to a person or shelter care facility; (5) emancipate the child; and (6) order the child or the child's parents to receive family services. Indiana Code § 31–37–19–1. Most of these options are not available in a criminal proceeding. Pursuant to Indiana Code section 31–37–19–6, a juvenile will generally only be confined in a juvenile detention center. However, in some instances a juvenile may be placed under the wardship of the Department of Correction for a fixed period of time. Indiana Code § 31–37–19–9.

Juveniles and adult criminal defendants are entitled to many of the same procedural rights. Juveniles, like adult criminal defendants, have the right to adequate notice of the charges against them, the appointment of counsel, and the privilege against self-incrimination. *In re K.G.*, 808 N.E.2d at 635. Juveniles are also entitled to introduce evidence on their own behalf, confront and cross-examine witnesses, and obtain witnesses and evidence through compulsory process. Indiana Code § 31–32–2–1 and –2. Juveniles, though, unlike criminal defendants, are not afforded a right to a jury trial during juvenile proceedings as "all matters in juvenile court shall be tried to the court." Ind.Code § 31–32–6–7; *see also McKeiver*, 403 U.S. at 545, 91 S.Ct. 1976. *Tighe* and *Brown* indicate that, in terms of *Blakely/Apprendi*, the crucial distinction between a juvenile adjudication and a criminal conviction is that juveniles are not given the right to a trial by jury. It must be remembered that the principal holding in *Blakely/Apprendi* was that any fact that is used to enhance a defendant's sentence beyond the statutorily prescribed presumptive sentence must be submitted to a jury and proven beyond a reasonable doubt. *Blakely*, 124 S.Ct. at 2536, *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Criminal convictions do not implicate *Blakely/Apprendi* because they are facts that have been submitted to a jury and proven beyond a reasonable doubt. Juvenile adjudications, on the other hand, implicate *Blakely/Apprendi* because, although in Indiana they must be proven beyond a reasonable doubt, they have never been submitted to a jury. Because of the procedural differences between juvenile and criminal proceedings, specifically the fact that juveniles are not afforded the right to a jury trial during juvenile proceedings, we conclude that juvenile adjudications should not be excepted from the general rule established in *Blakely/Apprendi*.

Therefore, based on Indiana Code section 31–32–2–6 and our supreme court's statement in *Jordan*, we hold that juvenile adjudications are not prior convictions under *Blakely/Apprendi*. A trial court's use of a defendant's juvenile adjudications to enhance his or her sentence beyond the statutorily prescribed presumptive sen-

tence violates the defendant's Sixth Amendment right to a trial by jury and is improper unless (1) the defendant was afforded the right to a trial by jury during the juvenile proceedings; or (2) during an aggravator phase of the defendant's criminal trial the defendant's juvenile adjudications are submitted to the jury and proved beyond a reasonable doubt. Here, there is no evidence that Pinkston was afforded the right to a trial by jury during his juvenile proceedings or that his juvenile adjudications were submitted to the jury and proved beyond a reasonable doubt during the aggravator phase of his criminal trial. Thus, the trial court's use of Pinkston's juvenile adjudications to enhance his sentence beyond the statutorily prescribed presumptive sentence was improper and violated his Sixth Amendment right to a trial by jury.

### C. Depreciate the Seriousness of the Offense and Need for Rehabilitative Treatment Aggravators

In enhancing Pinkston's sentence, the trial court also relied upon the two aggravating factors found by the jury, namely (1) that Pinkston was in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility, and (2) that imposition of a reduced or suspended sentence would depreciate the seriousness of the offense. Pinkston first argues that the State failed to present sufficient evidence to permit the jury to find beyond a reasonable doubt that these two aggravators existed. In this instance, we believe that our usual sufficiency of the evidence standard of review is applicable. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of witnesses. *Stokes v. State*, 801 N.E.2d 1263, (Ind.Ct.App.2004), *trans. denied*. We consider only the evidence most favorable to the jury's conclusion, together with all reasonable and logical inferences that can be drawn therefrom. *Id.* We will affirm a jury's findings if they are supported by substantial evidence of probative value. *Id.*

During the aggravator phase of Pinkston's trial, the State introduced the testimony of Santiago Lucas. Lucas testified that Pinkston physically beat him while he and Lucas were incarcerated at the Marion County Jail. The State introduced the testimony of the victim, George Burns, who related how Pinkston's actions had affected his life. The State also incorporated all of the evidence from the initial phase of the trial and the jury's guilty verdict into the aggravator phase of the trial. Based on this evidence, we believe that a reasonable trier of fact could conclude that (1) Pinkston was in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility, and (2) that imposition of a reduced or suspended sentence would depreciate the seriousness of the offense. Therefore, the State presented sufficient evidence from which the jury could conclude that these two aggravating factors existed.

■ Pinkston next argues that the trial court's reliance on the aggravating factor that the imposition of a reduced or suspended sentence would depreciate the seriousness of the offense to enhance his sentence was improper. We have stated that this particular aggravating factor is only used to "support a refusal to reduce the presumptive sentence." *Leffingwell v. State*, 793 N.E.2d 307, 310 (Ind.Ct.App. 2003). This aggravating factor cannot be used as a justification for a sentence above the statutorily prescribed presumptive sentence. *McNew*, 822 N.E.2d at 1081–82. Here, there is no indication that the trial court was considering imposing a sentence less than the presumptive sentence.

Therefore, the trial court erred in relying on this aggravating factor to enhance Pinkston's sentence above the presumptive sentence.

■ Pinkston also argues that the trial court improperly relied on the aggravating factor that he was in need of correctional or rehabilitative treatment best provided by a penal facility to enhance his sentence. In *Morgan v. State*, 829 N.E.2d 12 (Ind. 2005), our supreme court was faced with the question of whether a trial court's finding that prior punishments had failed to rehabilitate the defendant would constitute a valid aggravating factor. The court noted that "such statements, which our Court of Appeals has called 'derivative' of criminal history, are legitimate observations about the weight to be given to facts appropriately noted by a judge alone under *Blakely*. They cannot serve as separate aggravating circumstances." *Id.* at 17. The court held that

> sentences enhanced by aggravators whose language is not specifically found by a jury or admitted by the defendant, are not necessarily impermissible so long as the aggravator in question was 1) supported by facts otherwise admitted or found by a jury and 2) meant as a concise description of what the underlying facts demonstrate and therefore relies upon a legal determination otherwise reserved as a power of the judge.

*Id.* at 18. The court held that the trial court's finding only amounted to a conclusion about the weight to be given to the two valid aggravating factors found by the trial court. *Id.*

We have previously stated that the "need for corrective or rehabilitative treatment" aggravator is derivative of the defendant's criminal history. *See Teeters v. State*, 817 N.E.2d 275, 279 (Ind.Ct.App. 2004), *trans. denied.* Thus, we believe that *Morgan* is applicable with regard to

this aggravating circumstance. Based on *Morgan*, the "need for corrective or rehabilitative treatment" aggravator is a legitimate observation about the weight to be given to facts appropriately noted by the trial court judge, but it cannot serve as a separate aggravating factor. Therefore, the trial court improperly relied upon this aggravating factor in sentencing Pinkston.

Additionally, we agree with Pinkston that this aggravating factor was improper because neither the jury nor the trial court judge explained why Pinkston was in need of correctional or rehabilitative treatment. We have previously stated that with respect to this aggravating circumstance, "the trial court must explain why the defendant is in need of correctional treatment that can best be provided by a period of incarceration in excess of the presumptive term." *Powell v. State*, 751 N.E.2d 311, 316 (Ind.Ct.App.2001). Where a trial court fails to do this, its reliance upon that aggravating factor is improper. *Id.* at 317. Here, there is no indication that the jury or the trial court ever stated why Pinkston was in need of correctional or rehabilitative treatment. Therefore, the trial court's reliance upon this aggravating factor was improper.

### D. Conclusion

In sentencing Pinkston, the trial court found three aggravating factors that it used to enhance Pinkston's sentence. These aggravating factors were: (1) Pinkston's criminal history, consisting of only juvenile adjudications; (2) that Pinkston was in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility, and (3) that imposition of a reduced or suspended sentence would depreciate the seriousness of the offense. We have held that the trial court's reliance on each of these aggravating factors was improper. Therefore, pursuant to our power to review and revise

sentences under Article VII, Section 6 of the Indiana Constitution, we conclude that Pinkston should receive the presumptive sentence of one and one-half years for both his theft conviction and for his auto theft conviction. These sentences should run concurrently for a total sentence of one and one half years.

### Conclusion

Pinkston waived his constitutional argument regarding the aggravator phase of his trial. Notwithstanding that waiver, we conclude that the aggravator phase of Pinkston's trial was constitutional because our supreme court has specifically authorized such proceedings. Juvenile adjudications are not prior convictions under *Blakely/Apprendi*. The trial court's reliance on Pinkston's juvenile adjudications as an aggravating factor was improper and violated Pinkston's Sixth Amendment right to a trial by jury because Pinkston's juvenile adjudications were not submitted to a jury and proven beyond a reasonable doubt. The trial court's reliance on the aggravating factors that (1) Pinkston was in need of correctional or rehabilitative treatment, and (2) that the imposition of a reduced sentence would depreciate the seriousness of the offense, were also improper. Because each of the aggravating factors relied on by the trial court in enhancing Pinkston's sentences were improper, Pinkston's enhanced sentence is inappropriate. Therefore, we remand this case to the trial court for re-sentencing in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

I agree with the majority that there was no error in conducting a hearing for the purpose of asking the jury to determine the existence of aggravating circumstances, for sentencing purposes. I do not agree with the resolution of the second issue, however, in which the majority concludes that true findings of juvenile delinquency are not "criminal history" for purposes of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

As the majority notes, this court has previously held that juvenile adjudications constitute "prior convictions" under *Blakely*, and thus do not implicate the *Blakely* requirement that aggravators other than criminal history and those admitted by the defendant must be found by the factfinder. *See Ryle v. State*, 819 N.E.2d 119 (Ind.Ct. App.2004), *trans. granted.* As the majority also notes, our Supreme Court granted transfer in *Ryle*, and that decision is therefore vacated and held for naught. *See* Ind. Appellate Rule 58(A); *Wontorski v. Williamsburg Mobile Homes, Inc.*, 794 N.E.2d 433 (Ind.2003). We cannot know the outcome of the Supreme Court's deliberations on that question until it issues an opinion in *Ryle*. I note, however, that it is not a foregone conclusion that the holding will be reversed. In any event, until that decision is made, we must decide the issue without the benefit of *Ryle* as precedent.

The majority strikes off in an entirely new direction, adopting the rationale of the Tennessee Court of Criminal Appeals in *State v. Chatman*, 2005 WL 901138 (Tenn. Crim.App.2005). That court concluded that juvenile adjudications are not criminal history for *Blakely* purposes, and therefore must be found by the factfinder. Having read and considered both *Ryle* and *State v. Chatman*, I find the analysis in *Ryle* more persuasive. There is no need

to reinvent the wheel here. Although I cannot cite as precedent, I refer the reader to the *Ryle* decision for an explanation of the rationale that leads me to conclude that Pinkston's juvenile adjudications constitute "criminal history" for *Blakely* purposes, and therefore were not improper aggravators in this case. I would affirm the trial court in all respects.