CHRISTOPHER ROLER, Appellant-Defendant,
v.
STATE OF INDIANA, Appellee-Plaintiff.
No. 34A02-0602-CR-155
Court of Appeals of Indiana.
December 22, 2006
DAVID ROSSELOT, Kokomo, Indiana, ATTORNEY FOR APPELLANT.
STEVE CARTER, Attorney General of Indiana, GEORGE P. SHERMAN, Deputy Attorney General, Indianapolis, Indiana, ATTORNEYS FOR APPELLEE.

MEMORANDUM DECISION
MAY, Judge.
Christopher Roler appeals his eight-year sentence for child molesting as a Class C felony.[1] We affirm.

FACTS AND PROCEDURAL HISTORY
Roler occasionally stayed with his sister Tammy Myers. Her boyfriend Jason Williams, Myers' two children, and Roler's infant son[2] also lived in the house. Roler had watched Myers' children "hundreds" of times. (Tr. at 206.)
On September 20, 2004, Roler was babysitting the three children while Myers was in the hospital and Williams was at a funeral home. While his eight-year-old nephew L.M. was playing outside, Roler picked up his nine-year-old niece B.M. and carried her to her bedroom. He pulled down her pants and underwear, put her on the bed, and unzipped his pants. B.M. testified Roler touched her "private parts" and "butt" with his "hard" penis. (Id. at 80-82.) Williams walked in and found B.M. on her belly, "bent over the . . . foot of the bed, with her pants pulled down to her ankles and [Roler] on top of her. . . pumping on her, trying to have intercourse." (Id. at 45.) Roler stopped and rolled off her when Williams arrived. Williams called the police.
Roler was charged with Count I, child molesting as a Class A felony,[3] and Count II, child molesting as a Class C felony. The State later added Count III, attempted child molesting as a Class A felony,[4] and dismissed Count I. A jury found Roler guilty on Count II and not guilty on Count III.
In sentencing Roler, the trial court stated:
If one assumes that he's not going to have any more contact with this child, which I'm not sure is a valid assumption, I agree he wouldn't be a threat to this child. However, given his behavior in this case, I consider him a threat to any child. Furthermore, I do find and this was proven at the jury trial, that he is the uncle of this child and therefore did violate a great position of trust, especially given his, the extent of his interaction with this child as far as caring for her and being in the home. I do note that the lack of criminal record is a mitigating factor and I agree with [defense counsel] on the law; however, because, as pointed out by [the State], that [sic] he was using marijuana and had for some time, I don't give it as much weight as I normally would because he does have a history of criminal behavior if not criminal record. All in all, I am in complete agreement with the State and sentence him to 8 years in prison, access [sic] court costs, I find that the aggravating circumstances far outweigh the mitigating in this case, give him credit for 438 days and order him to register as a sexual offender upon his release.
(Id. at 268-69.)

DISCUSSION AND DECISION

1. Aggravators under Blakely

Prior to Blakely v. Washington, 542 U.S. 296 (2004), reh'g denied 542 U.S. 961 (2004), we reviewed our trial courts' sentencing decisions for an abuse of discretion. See, e.g., Bocko v. State, 769 N.E.2d 658, 667 (Ind. Ct. App. 2002), reh'g denied, trans. denied 783 N.E.2d 702 (Ind. 2002). If a trial court used aggravating or mitigating circumstances to modify the presumptive sentence, all we required the court to do was: 1) identify all significant mitigating and aggravating circumstances; 2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and 3) articulate the court's evaluation and balancing of the circumstances. See id. However, in Blakely, the Supreme Court held the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase a sentence above the presumptive sentence assigned by the legislature. 542 U.S. at 301.
In Smylie v. State, 823 N.E.2d 679 (Ind. 2005), cert. denied ___ U.S. ___, 126 S.Ct. 545 (2005), our Indiana Supreme Court held Blakely applies to Indiana's sentencing scheme, and thus requires "the sort of facts envisioned by Blakely as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." Id. at 686. However, Blakely does not require a jury find every fact used to enhance a sentence beyond the statutory presumptive. There are at least four ways such facts may properly be found and used by a court to enhance a sentence. An aggravating circumstance is proper under Blakely when it is: 1) a fact of prior conviction; 2) found by a jury beyond a reasonable doubt; 3) admitted or stipulated by a defendant; or 4) found by a judge after the defendant consents to judicial fact-finding. Trusley v. State, 829 N.E.2d 923, 925 (Ind. 2005).
Roler argues the trial court erred in finding as an aggravator he was in a position of trust with the victim. He asserts Blakely requires "aggravating factors (with certain exception) [sic] should be properly determined by a jury [and the aggravtors the trial court found] were not so determined and should be excluded as aggravating factors." (Br. of Appellant at 10.) He also argues "mere family relationship . . . without more," (id. at 7), does not place him in a position of trust with B.M. nor does babysitting "automatically" result in a position of trust. (Id.) We disagree.
With respect to Roler's claim under Blakely, we conclude he admitted sufficient facts to support the trial court's conclusion he was in a position of trust with B.M. Roler testified he "occasionally stayed at [his] sister, Tammy's [house]." (Tr. at 197.) He babysat Tammy's children, L.M. and B.M., and had done so since the children were "about four years old." (Id. at 198.) He had watched the children "hundreds" of times over the years. (Id. at 206.) It was his "responsibility" to get the children off to school that morning, (id. at 213), and to get them off the bus that afternoon. The children were left in his care that afternoon. When questioned why he would leave the children unattended while he took a nap,[5] he testified, "Well, they knew if there [sic] anything happens they can come and wake me up." (Id. at 217.) This permitted the trial court to conclude the children depended on and trusted Roler to help and protect them.
The trial court noted Roler was B.M.'s uncle and determined he "therefore did violate a great position of trust, especially given his, the extent of his interaction with this child as far as caring for her and being in the home." (Id. at 269.) The trial court did not enhance Roler's sentence merely because he was B.M.'s uncle or because he was her babysitter. Rather, the trial court supported the position of trust aggravator by reference to the admitted facts that Roler was B.M.'s uncle, he lived with the family at times, and he regularly cared for B.M. "This was an appropriate legal observation about properly established facts and constituted a legitimate aggravating circumstance." Trusley, 829 N.E.2d at 927. The trial court did not err in finding this aggravating circumstance.
Roler argues the trial court improperly considered as an aggravator his marijuana use the night before the molestation.[6] The State asserts the trial court "noted Roler's marijuana use as [a] factor in determining the mitigating weight to be accorded to Roler's lack of prior criminal convictions." (Br. of Appellee at 6.) We agree with the State. The trial court did not err in using Roler's admission of criminal behavior to determine the appropriate weight to assign to Roler's lack of criminal history. Cf. Weaver v. State, 845 N.E.2d 1066, 1073 (Ind. Ct. App. 2006) (declining to find lack of criminal history mitigating where defendant had no criminal record but admitted criminal acts that did not result in charges), trans. denied; Matshazi v. State, 804 N.E.2d 1232, 1240 (Ind. Ct. App. 2004) (declining to attach significant weight to lack of prior criminal record where evidence suggested defendant had committed other uncharged crimes), trans. denied 812 N.E.2d 802 (Ind. 2004).

2. Appropriateness of Sentence
We will not revise a sentence authorized by statute unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). We exercise great restraint in reviewing and revising sentences and recognize the special expertise of the trial bench in making sentencing decisions. Pinkston v. State, 836 N.E.2d 453, 458 (Ind. Ct. App. 2005), trans. denied. The presumptive sentence is the "starting point the Legislature has selected as an appropriate sentence for the crime committed." Childress v. State, 848 N.E.2d 1073, 1081 (Ind. 2006). A single aggravating factor is sufficient to support the imposition of enhanced sentences. Hayden v. State, 830 N.E.2d 923, 930 (Ind. Ct. App. 2005), trans. denied 841 N.E.2d 184 (Ind. 2005).
Roler asserts his eight-year sentence is inappropriate in light of his character and the nature of his offense. We disagree. At the time of Roler's offenses, the presumptive sentence for a Class C felony was four years, with not more than four years to be added for aggravating circumstances and not more than two years to be subtracted for mitigating circumstances. Ind. Code § 35-50-2-6(a) (2004).[7] The trial court imposed the maximum eight-year sentence.
Roler had no criminal convictions but smoked marijuana daily, including the night before he molested B.M. He stole "`household drugs' to use when he did not have marijuana and when he was in pain." (App. at 42) (pre-sentencing report).[8] He abused his position of trust with his sister's children. Nine-year-old B.M., her autistic eight-year-old brother L.M., and Roler's infant son had been left in his care. Roler left L.M. to play unsupervised in the yard while he molested B.M.
Regarding the nature of the offense, Roler molested his nine-year-old niece while he was babysitting her. He carried B.M. to her bedroom, pulled down her pants and underwear, and unzipped his jeans. While B.M. was on her back, Roler rubbed her genitals with his penis. Roler then turned B.M. over and rubbed her "butt" with his penis. (Tr. at 82.) B.M. testified Roler's penis went inside her butt and it hurt.[9] Roler did not stop "pumping on" B.M., (id. at 45), until Williams entered the room, yelled at him, and pulled B.M. away.
In light of Roler's character and the nature of his offense, we cannot say the maximum sentence is inappropriate.
Affirmed.
BAILEY, J., and RILEY, J., concur.
NOTES
[1] Ind. Code § 35-42-4-3(b).
[2] Myers regularly took care of Roler's son.
[3] Ind. Code § 35-42-4-3(a)(1).
[4] Ind. Code §§ 35-42-4-3(a)(1), 35-41-5-1(a).
[5] Roler claimed to have taken a nap after Myers and Williams left the children in his care. According to Roler, while the children were playing outside, he went to sleep in B.M.'s bedroom and did not wake up until after Williams had called the police.
[6] Roler testified he had stayed up the prior night, smoking marijuana and "cybering" with a woman in Peru. (Tr. at 210, 222).
[7] In 2005, the General Assembly amended Indiana's sentencing scheme in light of Blakely and Smylie, replacing presumptive sentences with advisory sentences and eliminating the mandatory consideration of enumerated factors in sentencing.
[8] At sentencing, Roler stated he had read the pre-sentencing report but did not understand the sentencing recommendation. Counsel then explained it to him. No changes were made to the report.
[9] In closing argument, the prosecutor stated: "Now there's no evidence from the doctors and at the hospital of trauma, tearing, bruising, blood, to her vagina or her rectum. I suspect from this evidence that his penis was somewhere in the crack of her butt but not inside." (Tr. at 231.)