Gerald L. STOKES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0212–CR–1081.

Court of Appeals of Indiana.

Jan. 22, 2004.

Transfer Denied April 23, 2004.

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Gerald L. Stokes (Stokes), appeals his convictions for Count I, conspiracy to commit dealing in cocaine, a Class A felony, Ind.Code § 35–48–4–1, and Count II, dealing in cocaine or narcotics, a Class A felony, I.C. § 35–48–4–1.

We affirm.

### ISSUES

Stokes raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred by allowing the jury to view exhibits after deliberations began; and

(2) Whether there was sufficient evidence to sustain his convictions.

### FACTS AND PROCEDURAL HISTORY

On August 15, 2002, Indianapolis Police Department officers and detectives (collectively, "IPD officers") conducted an investigation for illegal drug activity in the 4300 block of North Crittenden Street. The IPD officers focused their investigation on the residences at 4340 and 4346 North Crittenden Street.[1] Indianapolis Police Department Detective Thomas Stout (Detective Stout) obtained permission from the resident across the street and in between 4344 and 4346 North Crittenden Street to set up video surveillance in that residence. From this vantage point across the street from the targeted residences, Detective Stout videotaped any suspicious activity he observed in the area of those residences, and he informed the other IPD officers by police radio as to what he observed.

During his surveillance, Detective Stout observed Adrian Riggs (Riggs)[2] leave the porch at 4340 North Crittenden when a white female approached the residence. Riggs then walked with the female into the side door at 4346 North Crittenden. Shortly thereafter, when the white female exited from the side door at 4346 North Crittenden, her left hand was cupped as if she was holding something. Detective Stout further noticed Riggs twisting a plastic baggie into a knot.

Detective Stout observed Stokes sitting on the porch at 4340 North Crittenden and talking with an unidentified person. A heavy-set black female wearing a loose fitting blue shirt, striped pants, and a blue

---

1. The 4300 block of North Crittenden is made up of double houses. Thus, 4338 North Crittenden and 4340 North Crittenden is one house and 4346 North Crittenden and 4348 North Crittenden is one house. There is one house located between 4340 and 43460 North Crittenden, which is 4342 and 4344 North Crittenden.

2. We note that Riggs was tried as a co-defendant with Stokes at trial. Riggs also appeals the same issues presented in this appeal, under Cause Number 49A04–0306–CR–271. A separate Memorandum Decision is being issued on Riggs' appeal.

floppy hat pulled up to the 4340 North Crittenden residence in a car, with an unidentified male in the passenger seat. The woman exited the car and approached Stokes. Stokes and the woman walked to the back corner on the side of the 4344 North Crittenden residence. Once Stokes and the woman were in this location, Detective Stout could no longer view them. However, within a couple of seconds, Stokes reappeared. Detective Stout observed Stokes bring his left hand up to his mouth and biting off a piece of something.

Next, Riggs walked up to Stokes and stood next to him. An unidentified black male then approached Riggs. The man held out his right hand while Riggs was doing something with his hands. Thereafter, Riggs and the unidentified man made a hand-to-hand exchange, with Riggs putting something in the man's hand and the man in turn giving something to Riggs. When Riggs turned around, Detective Stout observed him twisting a plastic baggie.

In the meantime, Stokes went back into the area where he initially went with the black female in the blue floppy hat. When Stokes came back into the vicinity where Riggs was, the two men had a verbal exchange. Riggs handed something to Stokes and he placed it in his pocket. Detective Stout then observed Stokes counting money, with Riggs standing immediately behind him. Afterwards, Riggs and Stokes returned to the porch at the 4340 North Crittenden residence. The car with the black female, the black male, and one other unidentified person drove away.

Later that evening, the black female in the blue floppy hat returned alone to the 4340 North Crittenden residence. As she approached Stokes, he walked off of the porch to meet her. Stokes and the woman met in the area between 4344 North Crittenden and 4346 North Crittenden and walked to the back in between both residences. Stokes and the woman were out of Detective Stout's view for approximately twenty-nine seconds before they reappeared. When they came back into the view of Detective Stout, he observed the woman lift her T-shirt and put something inside of her bra. Stokes then returned to the porch at 4340 North Crittenden, while the woman drove away. Detective Stout notified other IPD officers regarding his observations. Following a traffic stop of the car driven by the woman, Indianapolis Police Department Detective Kincaid (Detective Kincaid) retrieved crack cocaine from inside the woman's bra.

Shortly thereafter, Stokes walked off the porch of 4340 North Crittenden and met with two men in the area between 4344 and 4346 North Crittenden. The men walked from the other half of the double house where Detective Stout was videotaping the transactions, which was across the street from 4344 North Crittenden.[3] Stokes and one of the men walked to the rear of 4346 North Crittenden where Detective Stout observed Stokes reach up to the windowsill by the side door and retrieve a white object smaller than a tennis ball.[4] Stokes then went directly to the side door of 4346 North Crittenden,

---

3. We note that, the residence where the men walked from the house does not share a porch with the residence where Detective Stout was videotaping the transactions. Nevertheless, Detective Stout testified that he could see the men on the porch as they left to go meet with Stokes across the street at the 4344 North Crittenden residence.

4. Again, we note that, because Detective Stout was located across the street and in between the 4344 North Crittenden residence and the 4346 North Crittenden residence, he was able to observe this transaction.

opened the door, and entered the residence together with the other black male. Stokes and the man were inside the residence for approximately one minute and twenty-nine seconds before Detective Stout observed them leave the residence. The man had his left hand in his pocket and Stokes had his right hand cupped as if he was holding something inside of his hand. Stokes then returned to the porch at 4340 North Crittenden while both of the men returned to the other half of the double where Detective Stout was located.

When the IPD officers arrived on the scene, Stokes and Riggs were sitting on the porch of 4340 North Crittenden playing a board game. As the IPD officers approached the residence, Riggs immediately stood up and quickly walked into the residence of 4340 North Crittenden. The IPD officers were given permission to enter the house and did so to apprehend Riggs. As the police searched for Riggs inside of the residence, they found the toilet running in the bathroom. The police found Riggs in the back bedroom. Riggs gave the police a false name when questioned. The IPD officers found approximately $30.00 in Riggs' front left pocket. The IPD officer searched Stokes and found $169.00 on him in small bills.

The IPD officers searched around the porch at 4340 North Crittenden and in between the residences but did not find anything. The IPD officers then entered the side door of the vacant residence at 4346 North Crittenden and briefly searched inside the residence. The IPD officers observed a large number of plastic baggies inside the residence, and eventually located a large plastic bag containing crack cocaine on the windowsill by the side door inside of the residence. The substance was seized and subsequently tested. Laboratory tests showed that it was 48.6239 grams of crack cocaine.

On August 16, 2002, the State filed an information against Stokes charging him with Count I, conspiracy to commit dealing in cocaine, a Class A felony, I.C. § 35–48–4–1; Count II, dealing in cocaine, a Class A felony, I.C. § 35–48–4–1; and Count III, possession of cocaine, a Class C felony, I.C. § 35–48–4–6. On October 28–29, 2002, a jury trial was held. At the conclusion of trial, the jury found Stokes guilty of all Counts.

On November 26, 2002, a sentencing hearing was held. At the hearing, the trial court merged Count III, possession of cocaine, a Class C felony, into Count II, dealing in cocaine, a Class A felony. The trial court further sentenced Stokes to thirty-five years executed and five years suspended on Count I, conspiracy to commit dealing in cocaine, a Class C felony. The trial court also sentenced Stokes to thirty years executed on Count II, dealing in cocaine, a Class A felony, to run concurrently to Count I.

Stokes now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Jury's Review of Exhibits After Deliberation Began

First, Stokes argues that the trial court committed reversible error by allowing the jury to view the videotape surveillance of the 4340 and 4346 North Crittenden residences in the deliberation room and not in open court with the trial court's supervision.[5] Stokes further argues that the trial

---

5. The aforementioned videotape surveillance was labeled State's Exhibit 1 at the trial of Stokes and Riggs. By this court's order dated September 30, 2003, both this appeal and Riggs' appeal was assigned to the same panel of judges to facilitate review of State's Exhibit

court erred by allowing the jury to view the videotape but not allowing the jury to view the cocaine that was recovered from the 4346 North Crittenden residence.

Conversely, the State argues that the trial court properly responded to the jury's requests during deliberations. In particular, the State contends that the videotape was material to the jury's deliberation and it was not unduly prejudicial because the jury previously viewed the videotape during trial. As a result, the State maintains that the trial court did not abuse its discretion in allowing the jury's to view the videotape after deliberations began. The State further claims that it was within the trial court's discretion to not allow the jury to view the crack cocaine that was recovered by the IPD officers.

The correct procedure for answering questions raised by the jury after deliberations have begun is set forth in Indiana Code section 34–36–1–6, which states, in pertinent part:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

I.C. § 34–36–1–6. Here, the parties agree that this statute does not apply because the jury did not express a disagreement over any item of testimony.

■■■ Thus, since the mandatory language of Indiana Code section 34–36–1–6 does not apply in this case, the decision to allow the jury to view the videotape again is within the discretion of the trial court. *See Sturma v. State*, 683 N.E.2d 606, 609 (Ind.Ct.App.1997); *See Kiner v. State*, 643 N.E.2d 950, 955 (Ind.Ct.App.1994), *reh'g denied.* The trial court should consider three factors in deciding whether to permit the jury to take a copy of the exhibits to the jury room. *Thacker v. State*, 709 N.E.2d 3, 6 (Ind.1999). Those factors are: (1) whether the material will aid the jury in a proper consideration of the case; (2) whether any party will be unduly prejudiced by submission of the material; and (3) whether the material may be subjected to improper use by the jury. *Id.; Goodrich v. Indiana Michigan Power Company*, 783 N.E.2d 793, 797–98 (Ind.Ct.App. 2003). Additionally,

[t]he trial judge must conduct the proceedings in a manner that facilitates ascertainment of the truth, insures fairness, and obtains economy of time and effort commensurate with the rights of both society and the criminal defendant.... Although this Court has been liberal in allowing the jury to rehear portions of the evidence, there are limitations on the trial court's discretion. For example, trial courts may not allow the jury to review the testimony of an entire trial.

*Id.* (quoting *James v. State*, 613 N.E.2d 15, 23–4 (Ind.1993)). While the trial court has discretion in determining what the jury may take with it to the jury room at the beginning of deliberations, that discretion is somewhat more limited in the situation where the jury interrupts its deliberations to request material to review. *Id.; Harris v. State*, 659 N.E.2d 522, 526 (Ind.1995); *Powell v. State*, 644 N.E.2d 855, n. 6 (Ind. 1994).

■■■ In the present case, the trial court did not give the jury the videotape at the beginning of deliberations, but allowed

1 with State's Exhibit 1 remaining a part of the record in the Riggs appeal.

them to view it in the jury room after deliberations had commenced. It is clear that the trial court could have given the jury the videotape at the beginning of deliberations. *See Harris,* 659 N.E.2d at 526 (holding it was proper for jury to have defendant's videotaped confession during deliberations, and that the judge could later send a tape player to the jury room so that they could access the exhibit). It is also clear that the trial court could have given the jury the videotape during deliberations and allowed them to view the videotape in open court. *See Sturma,* 683 N.E.2d at 610 (holding that it was proper for the jury to view the videotape after deliberations began, in open court where the trial court can monitor the use of the videotape). However, we are presented with a slightly different situation when the evidence is not given to the jury in open court where the trial court can monitor the use of the videotape.

In *Lawson v. State,* 664 N.E.2d 773 (Ind. Ct.App.1996), *trans. denied,* we reinforced the court's discussion in *Powell,* that:

> It would be perfectly proper for a trial court to replay for the jury in open court either tapes of testimony or tapes that have been admitted into evidence, but that providing the jury with items after deliberation has begun, and not monitoring the use of the items, constituted error. However, the court in *Powell* specifically noted that its holding was limited to cases in which additional materials were provided to the jury following the onset of deliberation.

*Lawson,* 664 N.E.2d at 777 (citing *Powell,* 644 N.E.2d at 855). Here, we have a situation where additional materials were provided to the jury following the onset of deliberation. However, the court did not monitor the use of the videotape by playing it for the jury in open court, as suggested by Indiana Code section 34–36–1–6,

*Lawson,* and *Powell. Lawson,* 664 N.E.2d at 773; *Powell,* 644 N.E.2d at 855. Rather, the trial court gave the videotape to the jury and provided the jury with the equipment and instructions to view the videotape on its own. Therefore, we find that the trial court abused its discretion in allowing the jury to review the videotape in the deliberation room without monitoring its use.

■ Nevertheless, we find that this error was harmless. In particular, Stokes fails to demonstrate how or why the review of the videotape at issue unduly prejudiced his case or was subject to improper use by the jury. *See Goodrich,* 783 N.E.2d at 797–98. Our review of the evidence indicates that the videotape surveillance served to aid the jury in its consideration of the case. *See Thacker,* 709 N.E.2d at 7. Specifically, we believe that the videotape could aid the jury in determining the credibility of the testimony of the IPD officers regarding what occurred and in understanding to what extent, if any, Stokes participated in the illegal activity. Further, there was little risk that the jury would issue or give undue weight to this exhibit because the videotape was already played in open court. In fact, the record reveals that the jury viewed the videotape twice in court during the presentation of the evidence. Consequently, we find that the trial court did not abuse its discretion by sending the videotape to the jury to view on their own after the jury began its deliberations. *See Harris,* 659 N.E.2d at 527.

■ Stokes further contends that the trial court erred in not allowing the jury to view the cocaine that was recovered from the windowsill at the 4346 North Crittenden residence. However, as mentioned above, the trial court has discretion in determining what evidence to allow the jury to view after deliberations have be-

gun. *See Sturma,* 683 N.E.2d at 609. Although Stokes contends that the jury could have placed undue emphasis on the other exhibits that the trial court allowed the jury to review, we find this contention without merit. The record clearly shows that the jury was allowed to review photographs of the recovered cocaine. This photograph of the cocaine was admitted as an exhibit at trial and was sent to the jury with the other exhibits requested. As a result, we do not find that the trial court abused its discretion in denying the jury's request to view the cocaine. *See id.*

## II. *Sufficiency of the Evidence*

Next, Stokes contends that the State failed to present sufficient evidence to support his convictions. Specifically, he argues that the State failed to establish that he committed dealing in cocaine and conspiracy to commit dealing in cocaine.

### A. *Standard of Review*

 Our standard of review for sufficiency claims is well settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or assess the credibility of witnesses. *Cox v. State,* 774 N.E.2d 1025, 1028–29 (Ind.Ct. App.2002). We consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences that can be drawn therefrom. *See Alspach v. State,* 755 N.E.2d 209, 210 (Ind. Ct.App.2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Cox,* 774 N.E.2d at 1028–29. A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of. guilt. *Maul v. State,* 731 N.E.2d 438, 439 (Ind. 2000).

### B. *Dealing in Cocaine*

Stokes contends that the evidence was insufficient to support his conviction for dealing in cocaine. Specifically, Stokes argues that the State failed to establish that he possessed the cocaine and had the requisite intent to deliver the cocaine that was recovered by the IPD officers.

Indiana Code section 35–48–4–1, states, in pertinent part:

(a) A person who:
(2) possesses, with intent to:
(A) manufacture;
(B) finance the manufacture of;
(C) deliver; or
(D) finance the delivery of;
cocaine, a narcotic drug, or methamphetamine, pure or adulterated, classified in schedule I or II;
commits dealing in cocaine, a narcotic drug, or methamphetamine, a Class B felony, except as provided in subsection (b).
(b) The offense is a Class A felony if:
(1) the amount of the drug involved weighs three (3) grams or more;

Thus, in order to convict Stokes of dealing in cocaine, the State was required to prove that Stokes knowingly possessed cocaine with the intent to deliver the cocaine. *See* I.C. § 35–48–4–1.

First, Stokes alleges that the State failed to prove beyond a reasonable doubt that he possessed cocaine, as required for a conviction on charges of dealing in cocaine under Indiana Code section 35–48–4–1(a)(2). Stokes claims that the State merely proved the presence of cocaine in the 4346 North Crittenden residence.

 Stokes is correct that the State did not offer direct evidence that he had sold or was planning to sell the cocaine, but circumstantial evidence of possession with intent to deliver is sufficient

to support the conviction. Upon appellate review, such evidence does not have to overcome every reasonable hypothesis of innocence but need only generate a reasonable inference of guilt. *Mills v. State,* 512 N.E.2d 846, 848 (Ind.1987). In the instant case, the record shows Stokes entering and exiting the 4346 North Crittenden residence on several occasions with different unidentified persons. At times, the videotape surveillance shows Stokes reaching into the windowsill at the 4346 North Crittenden residence and recovering something in his hands. The record further reveals that when the 4346 North Crittenden residence was searched, the IPD officers recovered cocaine from the same windowsill inside the house. Based upon this evidence, we find that it was reasonable for the fact finder to infer that Stokes possessed the cocaine that was found at the residence, given the number of times he was present at the residence and was observed reaching into the windowsill to obtain cocaine. *See Mills,* 512 N.E.2d at 848. As a result, we find that this evidence was sufficient to support the jury's determination that Stokes possessed cocaine with the intent to deliver.

 Stokes also argues that the evidence is insufficient to support his conviction because he contends that there is no evidence to prove that he intended to deliver cocaine as required under Indiana Code section 35–48–4–1. Intent is a mental function; therefore, absent an admission, the trier of fact must resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences thereof, a showing or inference of intent to ·commit that conduct exists. *Isom v. State,* 589 N.E.2d 245, 247 (Ind. Ct.App.1992). Stokes acknowledges that intent to deliver may be proved by cir-

cumstantial evidence. *Frierson v. State,* 572 N.E.2d 536, 537 (Ind.Ct.App.1991).

 Here, the record reveals that when the black female in the blue floppy hat returned to the 4346 North Crittenden residence for the second time, Stokes walked off of the porch to meet her. The woman and Stokes met in the area between 4344 North Crittenden and 4346 North Crittenden and walked to the back of the residence. Detective Stout testified that Stokes and the woman were out of his view for approximately twenty-nine seconds before they reappeared. Once they returned to Stouts view, he observed the woman lift up her T-shirt and put something inside of her bra. The woman then drove away, while Stokes returned to the porch at 4340 North Crittenden. The record shows that Detective Stout notified other IPD officers regarding what occurred and that Detective Kincaid had a patrol car stop the car driven by the woman. The record further reveals that Detective Kincaid retrieved crack cocaine from inside the woman's bra. Thus, we find that it was reasonable for the trier of fact to infer from this evidence is that Stokes sold the crack cocaine, recovered from the woman's bra, to her. *See Alspach,* 755 N.E.2d at 210.

Furthermore, the record indicates that Stokes entered the vacant residence at 4346 North Crittenden on several occasions with an unidentified person. The record reflects that while in the residence, Stokes went to the windowsill by the side door of 4346 North Crittenden and picked up a white object. The record also shows that when Stokes exited the vacant house, he no longer had the white object in his hands; however, he had his hand cupped as if something was in it. Thus, it is reasonable to infer that the white object Detective Stout observed Stokes retrieve from the windowsill from the 4346 North

Crittenden residence was the cocaine that was subsequently recovered. *See Isom,* 589 N.E.2d at 247 (possession of a large amount of a controlled substance is circumstantial evidence of intent to deliver, and the greater the amount in possession, the stronger the inference he intends it for delivery and not for personal consumption).

We also find that it was reasonable for the trier of fact to infer that Stokes sold some of this cocaine to the unidentified persons observed entering and exiting the residence. Nevertheless, Stokes contends that his conviction cannot stand because the State did not produce testimony that he delivered cocaine to anyone. However, as we have previously mentioned, intent to deliver may be proved by circumstantial evidence. *Frierson,* 572 N.E.2d at 537.

Thus, we conclude that a reasonable jury could have found beyond a reasonable doubt that Stokes knowingly possessed cocaine and intended to deliver it. *See* I.C. § 35–48–4–1. As a result, we find that the evidence was sufficient to sustain Stokes' conviction for dealing in cocaine.

### C. Conspiracy to Commit Dealing in Cocaine

Next, Stokes alleges that the evidence was insufficient to convict him of conspiracy to commit dealing in cocaine. In particular, Stokes claims that the State failed to establish that there was an agreement between Riggs and himself.

■ A person commits conspiracy when: (1) with intent to commit a felony; (2) the person agrees with another person to commit the felony; and (3) an overt act is performed by the defendant or the person with whom the defendant made the agreement in furtherance of that agreement. I.C. § 35–41–5–2. In proving the existence of an agreement element, the State is not required to show an express formal agreement, and proof of the conspiracy may rest entirely on circumstantial evidence. *Wieland v. State,* 736 N.E.2d 1198, 1203 (Ind.2000); *Bailey v. State,* 717 N.E.2d 1, 3 (Ind.1999). However, relationship and association with the alleged co-conspirator, standing alone, is insufficient to establish a conspiracy. *Cockrell v. State,* 743 N.E.2d 799, 804 (Ind.Ct.App. 2001).

■ Applying our standard of review, we find that the evidence was sufficient to support Stokes' conviction for conspiracy to commit dealing in cocaine. Our review of the videotape surveillance reveals several transactions, which permit the inference that Stokes and Riggs conducted several crack cocaine sales from the 4340 and 4346 North Crittenden residences. As previously mentioned, Detective Stout first observed Riggs accompany a white female into the side door of the 4346 North Crittenden residence. When Riggs and the woman exited the vacant residence, the woman's hand was cupped as if she was carrying something and Riggs was observed twisting a plastic baggie into a knot. The record reveals that Riggs also had a similar encounter with an unidentified black male. Detective Stout testified that shortly thereafter Riggs handed something to Stokes, following which Stokes was seen counting money.

Additionally, the videotape surveillance shows Riggs and Stokes sitting on the porch together throughout the entire day, except when either Stokes or Riggs would leave the porch to meet with an individual who approached them. In fact, both Riggs and Stokes were on the porch together when the IPD officers arrived at the residences. From these facts, a reasonable fact-finder could have found beyond a reasonable doubt that Stokes and Riggs were working together to sell crack cocaine from this location. Clearly, the record

proves that Stokes sold crack cocaine to the black female in the blue floppy hat, and the record also established that Riggs performed overt acts in furtherance of the agreement to sell crack cocaine. Consequently, we conclude that the State provided sufficient evidence to prove that Stokes, with the intent to commit dealing in cocaine, agreed with Riggs to sell cocaine, in furtherance of which both Stokes and Riggs performed the overt act of dealing in cocaine. *See Wieland,* 736 N.E.2d at 1203.

Based upon all of the above, we conclude that the State presented sufficient evidence to establish beyond a reasonable doubt that Stokes committed dealing in cocaine and conspiracy to commit dealing in cocaine. Accordingly, we find that there is substantial evidence of probative value to support the conclusion of the trier of fact. *Nantz v. State,* 740 N.E.2d 1276, 1279 (Ind.Ct.App.2001).

## CONCLUSION

Based on the foregoing, we conclude that Stokes was properly convicted of Count I, conspiracy to commit dealing in cocaine, a Class A felony; and Count II, dealing in cocaine or narcotics, a Class A felony.

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.