## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marcus Cotton, | March 9, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1508-CR-1077 |
| v. | Appeal from the Mario Superior Court |
| State of Indiana, | The Honorable Peggy Ryan-Hart, Judge Pro Tempore |
| *Appellee-Plaintiff.* | The Honorable David Seiter, Commissioner |
| | Trial Court Cause No. 49G20-1407-F2-37221 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Marcus Cotton (Cotton), appeals his conviction for dealing in cocaine, a Level 2 felony, Ind. Code § 35-48-4-1(a)(2); possession of cocaine, a Level 3 felony, I.C. § 35-48-4-6(a); possession of a narcotic drug, a Level 6 felony, I.C. § 35-48-4-6(a); and maintaining a common nuisance, a Level 6 felony, I.C. § 35-48-4-13(b)(2).

We affirm.

## ISSUE

Cotton raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to support his conviction.

## FACTS AND PROCEDURAL HISTORY

On July 24, 2014, Detective Patrick Collins with the Indianapolis Metropolitan Police Department (Detective Collins), together with several other officers, executed a search warrant for a residence on North Grand, Indianapolis, Indiana. The house was a "very small apartment in the back of a two-story house[,]" consisting of a living area, a bathroom, and a small kitchen. (Transcript p. 13). The front door had been fortified with several "brackets for a barricade[,]" a chain, and a padlock. (Tr. p. 39). There was a surveillance

camera in the bird house directly outside of the front door. After the SWAT team "busted in" the front door, the officers located Cotton "around the kitchen area" and Jill Warren (Warren) was found in the bathroom. (Tr. p. 13). Inside, "the home was in disarray. There was clothing thrown on the floor and things scattered everywhere." (Tr. p. 44). A packet of court documents bearing Cotton's name was found inside one of the kitchen cabinets. After being served with the warrant and read his *Miranda* rights, Cotton admitted to living in the residence and told Detective Collins that "he was hit[,]" which the officer understood to mean that "he was in trouble." (Tr. p. 18).

[5] Inside a box on the coffee table in the living room, the officers found a clear plastic baggie containing 27.86 grams of cocaine in powder form, an envelope with 2.2 grams of heroin, and currency. The substances found in the box were heat sealed and labeled as Heat Seal 1 for testing. On the coffee table was a pill bottle containing twenty-six individually wrapped baggies with crack cocaine, as well as two additional plastic baggies with suspected cocaine. The items found on the coffee table were heat sealed and labeled as Heat Seal 3. A crack pipe was found elsewhere in the living room. Inside the toilet in the bathroom, the officers found two plastic baggies with cocaine and a digital scale. These items were heat sealed and labeled as Heat Seal 5. Inside Warren's purse, which was found in the bathroom, the officers found cocaine, as well as a key to a hotel room registered in her name. A total amount of 59 grams of cocaine was recovered from the house, with 27.8 grams in powder form and the remainder in crack form.

[6] A total amount of $390.00 was found in the residence, as well as ammunition and a key to a safety deposit box. The detectives traced this key back to a safe located in Warren's hotel room. When they searched the hotel room, the officers found cocaine, heroin, and handguns.

[7] On July 28, 2014, the State filed an Information charging Cotton with Count I, dealing in cocaine, a Level 2 felony, I.C. § 35-48-4-1(a)(2); Count II, possession of cocaine, a Level 3 felony, I.C. § 35-48-4-6(a); Count III, possession of a narcotic drug, a Level 6 felony, I.C. § 35-48-4-6(a); Count IV, possession of methamphetamine, a Level 6 felony, I.C. § 35-48-4-6.1(a); Count V, maintaining a common nuisance, a Level 6 felony, I.C. § 35-48-4-13(b)(2); Count VI, possession of a controlled substance, a Class A misdemeanor, I.C. § 35-48-4-7(a). On May 11, 2015, Cotton waived his right to a jury trial. On June 24, 2015, the trial court conducted a bench trial and found Cotton guilty of Counts I-III and Count V. The trial court specifically found Cotton "in constructive possession of the drugs in the living room[,] [b]ased on the size of the apartment, the fact that he lived there, that [the drugs were] in plain view on the table and he acknowledged that he would see it when questioned by the detectives." (Tr. p. 67). Likewise, the trial court concluded that the dealing charge was supported by the evidence that "items were individually wrapped, that there were security surveillance systems, with barricaded doors and the money and denominations[.]" (Tr. p. 68). By agreement of the parties, a directed verdict was entered on Counts IV and VI.

During the sentencing hearing on July 21, 2015, the trial court merged Count II with Count I, noting that it found Count II proven, and sentenced Cotton to concurrent terms of twenty years, with five years suspended on Count I, two years on Count III, and two years on Count V.

Cotton now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Cotton contends that the State failed to present sufficient evidence to sustain his conviction for possession of cocaine, possession of heroin, and dealing in cocaine.[1] Our standard of review for a sufficiency of the evidence case is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Moore v. State*, 869 N.E.2d 489, 492 (Ind. Ct. App. 2007). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Id.* The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Id.*

### II. *Possession of Cocaine*

To convict Cotton of possession of cocaine, the State was required to prove beyond a reasonable doubt that Cotton "without a valid prescription . . .

---

[1] Cotton does not contest his conviction for maintaining a common nuisance, a Level 6 felony.

knowingly or intentionally possesse[d] cocaine[.]" I.C. § 35-48-4-6. The offense is a Level 3 felony if "the amount of the drug involved is at least twenty-eight (28) grams[.]" I.C. § 35-48-4-6(d)(1). Disputing the trial court's finding that he was in constructive possession of cocaine, Cotton contends that he was in the kitchen where no drugs were found.

[12] A person actually possesses contraband when he has direct physical control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). But a conviction for a possessory offense does not depend on catching a defendant red-handed. *Id*. When, as here, the State cannot show actual possession, a conviction for possessing contraband may rest instead on proof of constructive possession. *Id*. A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997).

[13] A trier of fact may infer that a defendant had the capability to maintain dominion and control over the contraband from the simple fact that the defendant had a possessory interest in the premises in which an officer found the item. *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004). We allow this inference even when that possessory interest is not exclusive. *Id*. at 341.

[14] A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over the contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive.

*Gray*, 957 N.E.2d at 174. When the possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item. *Id.* at 174-175. We have previously identified some possible examples, including (1) a defendant's incriminating statements; (2) a defendant attempting to leave or make furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of the contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns. *Id.* at 175.

[15] Here, Cotton admitted to residing in the house and there was no indication anyone else was living in the residence. Documents addressed to Cotton were found in the kitchen and "male clothing" was strewn throughout the apartment. (Tr. p. 15). The officers did not recall finding any female clothing. Immediately next to the kitchen was the living room where the officers found substantial amounts of cocaine on the coffee table. Much of the cocaine was in clear plastic baggies, and was intermingled with currency. Based on the record, we conclude that Cotton had the capability and intent to maintain dominion and control over the cocaine. Therefore, we affirm Cotton's conviction for possession of cocaine.

## II. *Possession of Heroin*

[16] Similar to his conviction for possession of cocaine, Cotton challenges the sufficiency of the evidence for his possession of heroin charge. *See* I.C. § 35-36-4-6. Specifically, Cotton asserts that "there was no evidence of the recovery of any heroin in the detective's description of the search of the residence." (Appellant's Br. p. 10).

[17] During the bench trial and in an effort to clarify "how much was found in the living room and how much was found in the bathroom," the following exchange occurred between Detective Collins and the trial court:

> [Detective Collins]: Heroin, 1.56 grams, living room. . . .
> Heroin, 2.2 grams, living room. Heroin, .84 grams, living room.
> And I think that is all.
>
> [Trial court]: Okay. So a little bit less than 5 grams of heroin in the living room and over 28 grams of cocaine in the living room, correct?
>
> [Detective Collins]: Correct.

(Tr. pp. 53-54).

Detective Collins further testified that substances found in the box on the coffee table in the living room were placed in Heat Seal 1. The lab results indicate that Heat Seal 1 contained 2.2 grams of heroin. Likewise, items collected in the living room and placed in Heat Seal 3, were confirmed through lab testing to include .84 grams of heroin. Accordingly, we conclude that heroin was recovered from the living room during the search. For the same reasons

discussed in the previous section, we find that Cotton had the capability and intent to maintain dominion and control over the heroin. Therefore, we affirm his conviction.

### III. *Dealing in Cocaine*

[18] Lastly, Cotton disputes the trial court's finding that the State presented sufficient evidence beyond a reasonable doubt establishing that Cotton "possessed [cocaine], with intent to deliver it." I.C. § 35-48-4-1(a)(2). In essence, Cotton claims that the State merely established the presence of cocaine in the residence, not the delivering element of the charge.

[19] Cotton is correct that the State did not offer direct evidence that he had sold or was planning to sell the cocaine, but circumstantial evidence of possession with intent to deliver is sufficient to support the conviction. *See Stokes v. State*, 801 N.E.2d 1263, 1271-72 (Ind. Ct. App. 2004), *trans. denied*. To that end, "circumstantial evidence of a defendant's intent to deliver" can be derived from the "possession of a large quantity of drugs, large amounts of currency, scales, plastic bags, and other paraphernalia, as well as evidence of other drug transactions." *Ladd v. State*, 710 N.E.2d 188, 191 (Ind. Ct. App. 1999). An amount of contraband that exceeds the amount reasonably possessed for personal use can alone be sufficient to uphold a conviction of dealing. *Kail v. State*, 528 N.E.2d 799, 809 (Ind. Ct. App. 1988), *trans. denied.*

[20] During the bench trial, Detective Collins testified as to the difficulty in entering the front door of Cotton's residence. He stated that the fortified front door had

"brackets for a barricade." (Tr. p. 39). There was a surveillance camera in the bird house directly outside of the front door. Detective Collins explained that "[g]enerally dealers use those surveillance systems for both protection against individuals trying to rob them, to see if police are approaching the home, [and] also to see who is approaching the home to buy." (Tr. p. 40). With respect to the amount of cocaine located in the house, Detective Collins testified that in his training and experience, users do not typically have 27 grams of cocaine. He explained that a "user will generally get what they want and use it right away." (Tr. p. 38). Moreover, users "don't have the money to purchase this type of amount" which typically costs around fifteen hundred dollars. (Tr. p. 38). Furthermore, detective Collins opined that "based on packages and the weight" of the cocaine, Cotton was dealing from the residence. The officers located a digital scale in the toilet, and clear plastic baggies throughout the residence. A portion of the cocaine found on the coffee table in the living room was equally distributed in twenty-six individually packaged clear plastic baggies containing approximately .10 to .11 grams of cocaine each, with "each individual package [] sold for $20." (Tr. p. 30).

[21] Detective Collins also testified to Cotton's admission that he resided in the apartment, and Cotton's statement that "he was hit[,]" which the officer understood to mean that "he was in trouble." (Tr. p. 18). As such, Cotton's attempt to shift the blame to Warren is nothing more than an invitation to reweigh the evidence, which we decline to do. *See Moore*, 869 N.E.2d at 492.

Accordingly, we conclude that this evidence is sufficient to support an inference that Cotton was dealing cocaine.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support Cotton's convictions for possession of cocaine, possession of heroin, and dealing in cocaine.

Affirmed.

Najam, J. and May, J. concur