## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 21 2020, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Erik D. Flynn,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

February 21, 2020

Court of Appeals Case No.
19A-CR-1757

Appeal from the Elkhart Superior Court

The Honorable Stephen R. Bowers, Judge

Trial Court Cause No.
20D02-1812-F5-367

**May, Judge.**

[1] Erik D. Flynn appeals his conviction of Level 5 felony aiding trafficking in a controlled substance with an inmate.[1] He raises two issues for our review, which we restate as: (1) whether the charging information was so deficient it amounted to fundamental error, and (2) whether the State presented sufficient evidence Flynn committed Level 5 felony aiding trafficking in a controlled substance with an inmate. We affirm.

## Facts and Procedural History

[2] Investigator Fred Mock of the Elkhart County Sheriff's Department learned contraband was being brought into the Elkhart County Jail and delivered to inmates working in the jail's kitchen. On July 10, 2018, officers searched the inmate kitchen workers as they left the kitchen to return to their housing pod. The officers found a cylindrical package tightly wrapped in cellophane containing a green leafy substance and cigarette rolling papers on inmate James Woodard. The Indiana State Police tested the substance and determined that it contained Fluoro ADB, a chemical compound found in synthetic marijuana.[2] Flynn was an inmate kitchen worker, but he was absent from work on July 10, 2018, because he had an appointment in the jail's medical ward.

---

[1] Ind. Code §§ 35-44.1-3-5; 35-41-2-4.

[2] The spelling of the substance varies throughout the record. The chemical name of the substance is methyl 2-(1-(5-fluroopentyl)-1H-indazole-3-carboxamido)-3,3-dimethylbutanote [5F-ADB; 5F-MDMB-PINACA]. (Tr. Vol. II at 113; State's Ex. 6.) For the sake of simplicity and consistency, we refer to the substance as "Fluoro ADB." (App. Vol. II at 16.)

[3]     The jail housed all the kitchen workers in the same pod at the jail, and on July 11, 2018, jail officers searched their housing unit. The inmates were instructed to line up against the wall, and Corrections Officer Tim Lechlitner of the Elkhart County Sheriff's Office ran his police dog past the inmates. The dog alerted that Flynn might be in possession of contraband. Officers then removed Flynn from the unit to strip search him. Officer Lechlitner then had his dog sniff all the bunks on the unit. The dog indicated that a few of the bunks, including Flynn's bunk, might contain contraband. Officers searched Flynn's possessions and found cigarettes.

[4]     Officers performed an initial strip search of Flynn and found a note in his shoe. The note stated:

> Yeah, we got popped off yesterday. Lost an ounce of Toon + 30 strips. I hate rats. I was over at medical waitin to see the Dr. yesterday too, trying to see you, but I . . .was askin about you. I am trying to let you C who I am. Im also trying get ahold of my sis to get some pics, she ain't answering her phone, Ill get em tho. So tell me, how you get involved in a robbery? How you get caught? Look, I got 2 □'s 4 you  but, can you get a lite? Or you can sell em. Matter of fact, here they are, ma. I don't want you 2 think I just be talkin. I don't play games. I'm tryin to get you somethin better. Its gonna be hard now tha my plug got popped off. But Ill keep tryin. Soon as I touch it, you got it, thats my word.

(State's Ex. 2) (errors in original). Investigator Mock then interviewed Flynn. During the interview with Investigator Mock, Flynn stated he knew a civilian jail employee was bringing contraband into the jail and delivering it to inmate

Craig Green. Flynn acknowledged writing the note and said he planned to deliver it to a female inmate. Flynn told Investigator Mock that the "somethin[g] better" referred to in the note meant "tune."[3] (State's Ex. 4 at 9:37:45-9:38:19.)[4] Flynn also said his reference in the note to a "plug" meant Green. (*Id*. at 9:38:25-9:38:39.) Following Investigator Mock's interview with Flynn, Officer Lechlitner performed a second strip search. Before the second strip search, Flynn handed over tobacco to Officer Lechlitner that Flynn had hidden in his pants.

[5] On December 26, 2018, the State filed an information charging Flynn with Level 5 felony aiding trafficking with an inmate. The information provided:

> The affiant of the Probable Cause Affidavit filed herewith swears that on or about July 10, 2018, at the County of Elkhart, State of Indiana, one ERIK D. FLYNN . . . did knowingly, and without prior authorization of the person in charge of the penal facility or juvenile facility, to wit: Elkhart County Jail, deliver or carry into the penal facility or juvenile facility with intent to deliver, a controlled substance to an inmate or child of the facility; all of which is contrary to the form of I.C. § 35-44.1-3-5(b)(1) and I.C. § 35-41-2-4; contrary to the form of the statute in such cases made and provided; and against the peace and dignity of the State of Indiana.

---

[3] Investigator Mock testified, "Tune is a common name for synthetic marijuana." (Tr. Vol. II at 71.)

[4] Citations to State's Exhibit 4 refer to the time of day the interview was recorded as indicated on the timestamp present on the top left corner of the video display.

(App. Vol. II at 14.) The probable cause affidavit stated that the suspected synthetic drugs recovered from inmate James Woodard contained Fluoro ADB.

[6] The trial court held a bench trial on April 9, 2019. Melinda McNair, a forensic scientist with the Indiana State Police, testified that Fluoro ADB "was federally controlled on April 10th, 2017, and controlled in the state of Indiana on July 7th, 2018." (Tr. Vol. II at 112.) The court took judicial notice of the statute authorizing state agencies to adopt emergency rules and the Indiana Board of Pharmacy emergency rule classifying Fluoro ADB as a controlled substance.

[7] Flynn testified at trial and admitted purchasing Suboxone and cigarettes from Craig Green. He denied giving "Tune" to anyone at the jail or asking anyone to bring "Tune" into the jail. (*Id.* at 123-24.) Flynn testified that Green asked Flynn to take a package back to the pod with him on July 10, 2018, but Flynn refused. Flynn admitted passing notes for Green. Flynn's counsel asked Flynn about the note found in his shoe:

> [Flynn's Counsel:] And uh, so who got popped off that day?
>
> [Flynn:] Uh, I said—I did say we, but I was—I—talking to her, I was talking as a whole, the whole kitchen popped off, so I couldn't help her out.

(*Id*. at 127.) Flynn also testified that the square in the note referred to tobacco cigarettes.

[Flynn's counsel:] Okay. So uh, next you wrote, I'm trying to get you something better. It's going to be hard now though, my plug got popped off. What were you trying to get her that was better?

[Flynn:] Just like, if she didn't smoke squares or uh, pretty much like, I asked her what she wanted and I could try to get it for her and that's what I was going to do.

[Flynn's counsel:] So it could have been Tune, it could have been Suboxone strips, it could have been a number of things?

[Flynn:] It could have been anything, but I mean, I just told her I would try to get her something better if she wanted it.

[Flynn's counsel:] But then you said, it's going to be hard now, my plug got popped off. What does that mean?

[Flynn:] Uhm, cause I was getting the, the, the—like the person I was getting the stuff from most of the time, when he got—Craig or Money would have stuff and everybody got caught, so I couldn't—I couldn't get her nothing.

(*Id*. at 129-130.) The court found Flynn guilty, and imposed a seven-year sentence, with five years executed in the Indiana Department of Correction and the remaining two years suspended to probation.

# Discussion and Decision

## 1. The Charging Information and Fundamental Error

[8] Flynn argues the State's failure to list the Indiana Board of Pharmacy emergency rule classifying Fluoro ADB as a controlled substance in either the

charging information or the probable cause affidavit amounts to fundamental error because it compromised his ability to prepare a defense. Indiana Code section 35-34-1-4 provides that a defendant may move to dismiss an inadequate charging information no later than twenty days before the omnibus date. Flynn did not move to dismiss the charging information, and he acknowledges that the failure to timely challenge a defective charging information results in waiver of the challenge, unless the defect amounts to fundamental error. *Hayden v. State*, 19 N.E.3d 831, 841 (Ind. Ct. App. 2014), *reh'g denied*, *trans. denied*.

[9]     As our Indiana Supreme Court has explained, "[t]he fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denied the defendant fundamental due process." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (internal quotation marks omitted). The claimed error must be so egregious it renders a fair trial impossible or constitutes a blatant violation of basic and elementary principles of due process. *Id.* An omission in the charging information constitutes fundamental error if it misleads the defendant or fails to give the defendant notice of the charges against him. *Miller v. State*, 634 N.E.2d 57, 61 (Ind. Ct. App. 1994).

[10]     Flynn likens his case to *Tiplick v. State*, 43 N.E.3d 1259 (Ind. 2015). In *Tiplick*, the defendant faced charges for possessing, selling, and dealing products containing the chemical compound XLR11 and moved to dismiss the charging information. *Id*. at 1260-61. Synthetic cannabinoids are difficult to regulate

because "minor variants in chemical structure can place the substances beyond the reach of criminal statutes without diminishing their psychotropic effects." *Id*. at 1261. In 2012, the Indiana legislature amended the criminal code to re-define the term "synthetic drug" to encompass a variety of compounds and chemical analogs, "including 'any compound determined to be a synthetic drug by rule adopted under IC 25-26-13-4.1.'" *Id*. (quoting 2012 Ind. Acts 1795-99). Indiana Code section 25-26-13-4.1 authorized the Indiana Board of Pharmacy to declare additional compounds to be synthetic drugs via emergency rule. *Id*. At the time Tiplick was charged, XLR11 was classified as a synthetic drug via emergency rule. *Id*.

[11] Tiplick argued "the information was required to reference the Emergency Rule rather than just the criminal statute, because without it, there is nothing to indicate with specificity the criminality of XLR11." *Id*. at 1270. Our Indiana Supreme Court agreed and held that the charges related XLR11 must be dismissed, but the court noted the State could "re-file an amended information with proper reference to the Emergency Rule." *Id*. at 1270 n.13. Initially, we note the different procedural posture between the case at bar and *Tiplick*. "The purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010), *trans. denied*. Tiplick challenged the adequacy of the charging information at the beginning of the litigation when he was still formulating a defense; whereas, Flynn challenges the charging information after he was tried and convicted.

[12] Flynn knew the substance that he was alleged to have aided in trafficking and never contested the criminality of the substance. The probable cause affidavit identified Fluoro ADB as a controlled substance, even though it did not specify any statute or Indiana Board of Pharmacy emergency rule listing Fluoro ADB as a prohibited substance. The Indiana State Police Certificate of Analysis also identified Fluoro ADB as a controlled substance, and it listed the dates it was federally controlled and controlled in Indiana. Further, when the State asked the trial court to take judicial notice of the emergency rule, the deputy prosecutor noted that he had spoken with Flynn's counsel before offering the exhibit. Therefore, the failure of the charging information and the probable cause affidavit to list the emergency rule classifying Fluoro ADB as a controlled substance does not amount to fundamental error. *See Leggs v. State*, 966 N.E.2d 204, 208 (Ind. Ct. App. 2012) (holding failure of charging information to allege defendant acted with intent that the victim be put in fear was not fundamental error).

## 2. Sufficiency of the Evidence

[13] When reviewing the sufficiency of the evidence to support a conviction, we look only to the probative evidence and the reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). The evidence does not need to overcome every hypothesis of innocence. *Id*. at 147. We do not reweigh the evidence; nor do we assess the credibility of the witnesses. *Stokes v. State*, 801 N.E.2d 1263, 1271 (Ind. Ct. App. 2004), *trans. denied*. "The conviction will be affirmed if there is substantial evidence of probative value to

support the conclusion of the trier of fact." *Id*. "A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt." *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000). Also, the testimony of a single eyewitness is enough to sustain a conviction. *Emerson v. State*, 724 N.E.2d 605, 609-10 (Ind. 2000), *reh'g denied*. "It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve." *Ferrell v. State*, 746 N.E.2d 48, 51 (Ind. 2001). We will reverse "only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *McMiller v. State*, 90 N.E.3d 672, 675 (Ind. Ct. App. 2017).

[14] A person who aids, induces, or causes another to commit an offense is also guilty of the offense. Ind. Code § 35-41-2-4. "Under the theory of accomplice liability, 'an accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence' of their concerted action." *Porter v. State*, 715 N.E.2d 868, 870 (Ind. 1999) (quoting *McGee v. State*, 699 N.E.2d 264, 265 (Ind. 1998)). The State does not need to prove "the accomplice personally participated in the commission of each element of the offense." *Anthony v. State*, 56 N.E.3d 705, 714 (Ind. Ct. App. 2016), *trans. denied*. Flynn argues the State presented insufficient evidence to support his conviction. He contends the State presented no evidence linking him to James Woodard or linking James Woodard to Craig Green. He argues he merely purchased tobacco and Suboxone but denies trafficking as charged.

[15] Nonetheless, trafficking into the jail did occur because officers found Woodard in possession of Fluoro ADB. Flynn knew about trafficking into the kitchen and identified the civilian kitchen worker involved. The jail did not authorize inmates to possess tobacco, and Flynn had tobacco on his person and in his possessions. He also acknowledged passing notes on behalf of Green because Green did not want to get caught passing notes to other inmates. Further, Flynn made incriminating statements in the note found in his shoe. For example, he said, "we got popped off yesterday. Lost an ounce of Toon + 30 strips." (State Ex. 2.) He promised the intended recipient of the note "somethin[g] better…Soon as I touch it[.]" (*Id*.) Flynn also stated his "plug got popped off." (*Id*.)

[16] Flynn offered explanations for these statements in his testimony. For example, he said the "we" referred to the kitchen staff. (Tr. Vol. II at 127.) He denied giving tune to anyone at the jail or asking anyone to bring tune into the jail. He said the note was his way of trying to get to know the intended recipient and impress her. However, the factfinder was not required to believe Flynn's explanations. *See Graves v. State*, 472 N.E.2d 190, 191 (Ind. 1984) ("In a case of conflicting evidence, the trier of fact is not obliged to believe the testimony of the defendant or any other particular witness. It is the prerogative of the jury to weigh the evidence and to determine who, in fact, is telling the truth.").

[17] The trier of fact could easily infer that Flynn's statements in the note demonstrate Flynn's involvement in trafficking and an offer to supply the female inmate with tune when the substance became available. We will not

second guess the credibility determinations of the trier of fact. *McElfresh v. State*, 51 N.E.3d 103, 111 (Ind. 2016). Given the evidence linking Flynn to aiding in trafficking, a reasonable trier of fact could conclude Flynn was guilty beyond a reasonable doubt. *See Crittendon v. State*, 106 N.E.3d 1100, 1103 (Ind. Ct. App. 2018) (holding sufficient evidence supported conviction for possession of narcotic drug when defendant admitted using heroin and showed signs of heroin overdose).

# Conclusion

[18] While the charging information and the probable cause affidavit were flawed because they failed to reference the Indiana Board of Pharmacy's emergency rule listing Fluoro ADB as a prohibited substance, such flaw does not amount to fundamental error. Further, there was sufficient evidence to affirm Flynn's conviction. Accordingly, we affirm.

[19] Affirmed.

Crone, J., and Pyle, J., concur.